**Not for Publication in West's Federal Reporter**

# United States Court of Appeals

## For the First Circuit

No. 10-1620

KATHLEEN KINDELAN,

Plaintiff-Appellant,

v.

DISABILITY MANAGEMENT ALTERNATIVES, LLC, ET AL.

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary M. Lisi, U.S. District Judge]

Before

Lipez, Circuit Judge,
Souter, Associate Justice,[*]
and Howard, Circuit Judge.

Vicki J. Bejma, with whom Robinson & Clapham was on brief, for appellant.
George P. Kostakos, with whom Carie A. Torrence and Littler Mendelson, P.C. were on brief, for appellees.

August 17, 2011

---

[*]     The Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**SOUTER, Associate Justice.** This is an appeal from a district court judgment sustaining denial of disability benefits under an employee health plan subject to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461. The issue was joined on cross motions for summary judgment on which the trial court sat in an essentially appellate capacity, see Cusson v. Liberty Life Assurance Co., 592 F.3d 215, 224 (1st Cir. 2010), subject to this court's de novo review, see Orndoff v. Paul Revere Life Ins. Co., 404 F.3d 510, 516-17 (1st Cir. 2005).[1]

The appellant, Kathleen Kindelan, has had serious back trouble for over thirty years, with a number of surgeries, the most recent being a lumbar fusion in 2005. Dr. Mark Palumbo saw her on September 25, 2007, and noted that she was getting along "reasonably well" and "doing well from a functional standpoint." On October 3, however, she returned to report back and lower extremity pain. The doctor noted anxiety and agitation, and recommended four to six weeks at home, with back exercises and pain killers.

Kindelan followed the advice and applied for benefits to the defendant UnitedHealth Group Short Term Disability Plan, which delegated benefits administration to the defendant Disability

---

[1] A plenary recitation of the facts and procedural history of this case can be found in the district court's opinion. See Kindelan v. Disability Mgmt. Alts., LLC, 706 F. Supp. 2d 210 (D.R.I. 2010).

Management Alternatives (DMA). After a false start, DMA denied the claim on October 24, 2007, a decision which was affirmed after further consideration on November 5, 2007, and was affirmed again on February 21, 2008, after an appeal that included review by an outside physician on contract with the Plan, Dr. Amy Hopkins.

The October letter simply listed a series of disabilities not covered, including those whose courses "cannot be verified and measured using generally accepted standard medical procedures and practices . . . . [C]onditions commonly referred to as self-reported conditions [including without limitation] fatigue, loss of energy, [and] pain . . . ." The November letter explained that material from Dr. Palumbo in support of Kindelan's application "provides no evidence of any physical and functional limitations" that would preclude working and advised that any appeal should be supported by medical records for the period after October 1, including "the results of diagnostic studies such as x-rays and laboratory tests . . . ." Finally, the February 2008 letter after the administrative appeal noted "no evidence of any physical or functional limitation" on work and summarized the gist of the reasons for denial in these words:

> It is not clear why an individual would go from being fully functional at work and at home to unable to work at all in such a short time period with no documented change in examination or diagnostic test results and with no aggressive treatment ordered. Dr. Palumbo ordered x-rays of the lumbar spine, which were unremarkable, but no further

testing, such as MRI, to explain this sudden change in your condition. While you have a long and complicated musculoskeletal history, it appears that there may be more than physical reasons why you went out of work. The medical record does not convincingly document your inability to work full time from October, 1, 2007 onwards.

At the outset, several issues may be placed to one side as inconsequential to the outcome. First, although Kindelan claims she had no adequate chance to rebut Dr. Hopkins's reasons for affirming denial, she was given the opportunity ERISA and its regulations guarantee, of submitting evidence and information. See 29 C.F.R. § 2560.503-1(h). In effect, Kindelan is claiming a right to a further administrative appeal. Second, there is no reason to think that the appeal decision suffered from according inadequate weight to the decision of the Social Security Administration to provide disability benefits. Although the federal scheme restricts such benefits to claimants who can perform no work (not just their prior job, as under the Plan's terms), there is no indication that Social Security restricts qualifying disabilities to those that can be proven on the evidence required by the Plan. The evidentiary significance of any federal determination is accordingly limited. See Pari-Fasano v. ITT Hartford Life & Accident Ins. Co., 230 F.3d 415, 420 (1st Cir. 2000). Third, as will be seen from the discussion of the basis for denial that follows, it does not matter here whether the Plan's decision is subject to review simply for arbitrary or capricious action, or abuse of discretion, as in the

-4-

ordinary case, or should be subjected to that standard with particular consideration of any conflict of interest on the part of the administrative decision makers (as alleged here on the part of DMA owing to the amount of business it gets from the Plan, and on the part of Dr. Hopkins due to the volume of her work for DMA). Enhanced scrutiny would not affect the result. For the same reason, it does not matter that the district court struck from the record opinions from other courts critical of Dr. Hopkins, which Kindelan offered as evidence of bias in favor of insurance providers.

With these matters out of the way, the heart of the case can be simply stated. Although Kindelan's chronic back trouble generated a history of test results confirming the symptoms she reported over the years, her burden in order to obtain the desired disability coverage is to document what she claims to have been a debilitating change in the course of the week after her regular periodic examination. Because she says that the allegedly covered disability occurred after her September visit to the doctor, what counts under the Plan is her condition in that ensuing period. On September 26, Dr. Palumbo noted that she had no serious functional difficulties. On October 3 she reported such pain that the doctor recommended time off from work. But she and her treating physician provided no test results or medical diagnostic evidence to explain the sudden deterioration. After the October 3 visit, Dr. Palumbo

did not order any additional tests, medical or psychological. While the doctor speculated that the explanation might well lie in the mind, not the spine, that is as far as he followed his line of thinking, and at the end of the day Kindelan offered nothing to explain the change she claimed, beyond the "self-reported" pain that the plan expressly excludes as an independently covered disability. On this record, it is difficult to see how any Plan administrator or appellate reviewer could have concluded that she had shown a covered disability falling within the Plan definitions and supported by the evidence they require for proof of a claim.

**<u>Affirmed</u>**.